UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Xuseen A., | Civ. No. 25-4514 (JWB/EMB) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Department of Homeland Security; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; Immigration and Customs Enforcement; Daren K. Margolin, *Acting Director for Executive Office for Immigration Review*; Executive Office for Immigration Review; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | **ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Respondents. | |

Cameron Lane Youngs Giebink, Esq., David L. Wilson, Esq., and Lee Anne Koller Mills, Esq., Wilson Law Group, counsel for Petitioner.

Ana H. Voss, Esq., and Lucas B. Draisey, Esq., United States Attorney's Office, counsel for Respondents.

Petitioner Xuseen A. is a Somali citizen who entered the United States without inspection on March 16, 2023. (*See* Doc. No. 1, Petition ¶¶ 13, 28–29; Doc. No. 6 at 3.) He was designated as "an alien present in the United States who has not been admitted or paroled" and released on personal recognizance on March 21, 2023. (Petition ¶¶ 30–31, Doc. Nos. 2-1, 2-2, Pet. Exs. A, B.) Respondents served Petitioner with a Notice to Appear dated March 20, 2023, requiring him to appear at the Immigration Court in Fort

Snelling, Minnesota on November 17, 2023 but they did not further pursue the Notice or initiate removal proceedings on that basis. (*Id.* ¶ 32; Pet. Ex. A; Doc. No. 6 at 2.)

On December 23, 2024, Petitioner applied for Temporary Protected Status ("TPS") under the designation for Somalia, which had been most recently renewed for 18 months beginning September 18, 2024. (Petition ¶ 36; Doc. Nos. 2-3, 2-7, Pet. Exs. C, G.) Petitioner's TPS application was received but is still being processed and remains pending with USCIS. (Doc. No. 2-3, 2-5, Pet. Exs. C, E.)

Respondents served Petitioner with a new Notice to Appear on June 24, 2025, which stated the same allegations and charges as the March 2023 Notice. (Petition ¶ 34; Doc. No. 2-4, Pet. Ex. D.) The Notice required Petitioner to appear at the Fort Snelling Immigration Court on August 6, 2025. (Pet. Ex. D at 1.) Petitioner alleges that he has no criminal history and has fully complied with the terms of his release. (Petition ¶ 38; Doc. No. 6 at 2.)

On December 3, 2025, Petitioner was apprehended by Respondents and has since remained in ICE custody. (Petition ¶¶ 39–42; Doc. No. 6 at 2.) He has not had a bond hearing. (Petition ¶¶ 2–3.) He is detained in Minnesota, but the exact detention facility has not been disclosed. (Doc. No. 6 at 2–3.) He has been told he will be moved outside this District on December 5, 2025. (*Id.*)

Petitioner claims his detention violates 8 U.S.C. § 1254a(d)(4), which precludes noncitizens provided with TPS from being detained on the basis of their immigration status. (Petition ¶¶ 94–96.) He argues 8 U.S.C. § 1254a(a)(4)(B) requires that he be provided with temporary TPS protection while his application is being processed. (*Id.*)

2

Alternatively, Petitioner claims Respondents have wrongfully detained him pursuant to the mandatory detention provisions under 8 U.S.C. § 1225(b)(2) and that the discretionary detention provisions under 8 U.S.C. § 1226(a)—which include a bond hearing—should govern his case. (*Id.* ¶¶ 107–118.)

Petitioner now seeks a temporary restraining order ("TRO") that bars his transfer out of this District while his petition is pending and requires Respondents to provide him a bond hearing in accordance with 8 U.S.C. § 1226(a)(2)(A) within 7 days. (Doc. No. 4.) For the reasons below, Petitioner's motion is granted in part.

## DISCUSSION

### I. Legal Standard

Courts weigh four factors when considering a motion for a TRO: the likelihood of success on the merits, the threat of irreparable harm, the balance of harms, and the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981). When the Government is the opposing party, the last two factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

### II. Analysis

#### A. Likelihood of Success on the Merits

The likelihood of success factor requires Petitioner to show he has a fair chance of prevailing on his claims. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1343 (8th Cir. 2024). It is not a decision on whether he will ultimately win. *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007). To obtain relief, Petitioner must satisfy this factor on at least one of his claims. *See United Healthcare Ins. v. AdvancePCS*, 316 F.3d 737,

742–43 (8th Cir. 2002).

1. **Temporary Protected Status**

Petitioner's primary claim arises under the Temporary Protected Status ("TPS") statute, 8 U.S.C. § 1254a. The prohibition in 8 U.S.C. § 1254a(d)(4) is clear: "An alien provided temporary protected status . . . shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." The statute also provides for temporary protection while an application is pending: "In the case of an alien who establishes a prima facie case of eligibility for benefits . . ., until a final determination with respect to the alien's eligibility for such benefits . . ., the alien shall be provided such benefits." 8 U.S.C. § 1254a(a)(4)(B). Petitioner alleges that he submitted a complete TPS application on December 23, 2024, and that Respondents accepted it for processing. (Petition ¶ 36; Pet. Exs. C, E, G.) Petitioner provides the receipt for his submitted application—but not the application itself—as an exhibit to his habeas petition.

Importantly, Petitioner expressly states that he is not seeking to adjudicate his TPS application through his habeas petition. (Doc. No. 6 at 9.) Even so, the record at this stage does not establish whether Petitioner has made the prima facie showing of eligibility contemplated by § 1254a(a)(4)(B). This Court therefore does not reach Petitioner's TPS-based claim for purposes of this TRO.

2. **Detention under § 1225 or § 1226**

As an alternative to his TPS claim, Petitioner also joins the collection of habeas petitioners who have challenged Respondents' recent practice of treating noncitizens who arrived without inspection but have remained in the United States for years as "applicants

4

for admission" subject to mandatory detention under 8 U.S.C. § 1225. Like the others, he argues that the text, structure, legislative history, and past agency interpretation of the immigration statutes indicate that § 1225 applies to noncitizens seeking to enter the country, while § 1226 applies to noncitizens already in the country. Nearly every district court considering this issue, including in this District, has sided with Petitioner's reading. (*See* Doc. No. 6 at 15–16 (collecting cases); *see also* Petition ¶ 81.)

Petitioner's immigration history aligns with those decisions. When Petitioner first entered the United States in March 2023, Respondents released him on an Order of Release on Recognizance and served him with a Notice to Appear—not any document initiating expedited removal. (Pet. Exs. A, B.) The Notice to Appear states Petitioner is subject to removal pursuant to INA § 212(a)(6)(A)(i) and checks the box stating: "You are an alien present in the United States who has not been admitted or paroled." (Pet. Ex. A at 1.) The 2024 Notice to Appear makes the same indication: that Petitioner is an alien present without admission or parole and *not* an arriving alien. (Pet. Ex. B.) In addition, the Order of Release on Recognizance begins with the following text:

> You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions . . . .

(Pet. Ex. B. at 1.)

Section 236 of the Immigration and Nationality Act equates to 8 U.S.C. § 1226, the discretionary detention statute.

Petitioner alleges enough about his manner of entry, his continuous presence in the

United States, and his recent arrest to show that his case materially resembles the others in which courts have concluded that § 1226—not § 1225(b)(2)—governs detention. On this record, he has shown a fair chance of prevailing on his statutory claim.

### B. Irreparable Harm

The risk of irreparable harm here is clear. If Petitioner is transferred or removed from this District before this Court can adjudicate his claims, judicial review may be impeded and perhaps lost altogether. *See Mohammed H. v. Trump*, Civ. No. 25-1576 (JWB/DTS), 2025 WL 1170448, at *4 (D. Minn. Apr. 22, 2025) ("Once a petitioner is removed from the jurisdiction of the detaining court, access to counsel may be severed, the custodian may no longer be subject to the Court's authority, and the petitioner's ability to participate meaningfully in litigation may be impaired or lost completely.").

Deportation—or even transfer to a distant facility—is a harm that cannot be undone after the fact. The Eighth Circuit is clear that even temporary deprivations of constitutional rights constitute irreparable injury. *Ng v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023). And loss of liberty is a quintessential example of irreparable harm. *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018).

### C. Balance of Harms, Public Interest

This Court discerns no prejudice to Respondents from maintaining the status quo until Petitioner's habeas petition is decided on the merits. By contrast, transferring Petitioner out of this District could hinder his access to counsel and diminish his ability to effectively present his claims. *Escalante v. Bondi*, Civ. No. 25-3051 (ECT/DJF), 2025 WL 2212104, at *2 (D. Minn. July 31, 2025), *R&R adopted*, 2025 WL 2235056 (D.

Minn. Aug. 5, 2025). The balance of harms tilts toward Petitioner.

The public interest likewise supports preventing unlawful detention and preserving meaningful judicial review. The Constitution requires nothing less.

Given these considerations, immediate intervention is necessary. Petitioner's motion is granted to the extent that it seeks to prevent his removal or transfer from this District. The request for a bond hearing is denied because it is intertwined with part of Petitioner's ultimate merits claim—that 8 U.S.C. § 1226 governs his detention—which is ordinarily not appropriate relief at the TRO stage. *See Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023).

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner's Emergency Motion for Temporary Restraining Order (Doc. No. 4) is **GRANTED IN PART**.

2. Respondents—along with their officers, agents, employees, and all persons acting in concert with them—shall not remove, transfer, or otherwise facilitate the removal of Petitioner from the jurisdiction of the United States District Court for the District of Minnesota pending further order of this Court.

3. No security is required under Federal Rule of Civil Procedure 65(c). The TRO seeks only to prevent ongoing statutory and constitutional violations; Petitioner is detained and unable to post a bond; and the relief ordered here—maintaining the status quo—presents no apparent risk of monetary loss to the Government.

4.	This Order shall remain in effect for 14 days from the date of entry, unless extended by further court order under Federal Rule of Civil Procedure 65(b)(2).

| | |
|---|---|
| Date: December 5, 2025<br>Time: 12:51 p.m. | *s/ Jerry W. Blackwell*<br>JERRY W. BLACKWELL<br>United States District Judge |