UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Xuseen A., | Civ. No. 25-4514 (JWB/EMB) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Department of Homeland Security; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; Immigration and Customs Enforcement; Daren K. Margolin, *Acting Director for Executive Office for Immigration Review*; Executive Office for Immigration Review; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |
| Respondents. | |

---

Cameron Lane Youngs Giebink, Esq., David L. Wilson, Esq., and Lee Anne Koller Mills, Esq., Wilson Law Group, counsel for Petitioner.

Ana H. Voss, Esq., and Lucas B. Draisey, Esq., United States Attorney's Office, counsel for Respondents.

Petitioner Xuseen A. seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging his continued detention in immigration custody as unlawful after DHS re-detained him under a mandatory detention theory, notwithstanding his prior release on an Order of Release on Recognizance under 8 U.S.C. § 1226 and his pending application for Temporary Protected Status ("TPS").

Respondents, the Executive Branch officials responsible for Petitioner's current

confinement, contend that protection from detention is not available as a temporary benefit to TPS applicants and that Petitioner is properly subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2).

This petition does not challenge the validity of any removal order or seek review of removal proceedings. It challenges only the statutory authority for Petitioner's continued detention. Habeas jurisdiction therefore lies notwithstanding the jurisdiction-channeling provisions of 8 U.S.C. § 1252. *See INS v. St. Cyr*, 533 U.S. 289, 305–07 (2001) (holding that § 1252 does not strip district courts of habeas jurisdiction over challenges to the legality of immigration detention); *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025) (exercising § 2241 jurisdiction where petitioner challenged detention authority rather than removal).

Because Respondents have not identified a provision of the Immigration and Nationality Act that authorizes Petitioner's detention under the mandatory detention theory they invoke, the petition is granted on statutory grounds, and Petitioner's alternative TPS arguments are not reached.

## BACKGROUND

Petitioner is a native and citizen of Somalia. (*See* Doc. No. 1, Petition ¶¶ 13, 28.) United States Border Patrol encountered him near San Ysidro, California in March 2023. (*Id.* ¶ 29; Doc. No. 13, Patrin Decl. ¶ 4.) He was issued a Notice to Appear designating him as "an alien present in the United States who has not been admitted or paroled" and charging inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). (Petition ¶ 32; Doc. No. 2-1, Pet. Ex. A.) He was then released from custody on personal recognizance. (Petition

¶¶ 30–31, Doc. No. 2-2, Pet. Ex. B.) Petitioner alleges that he has no criminal history and has fully complied with the terms of his release. (Petition ¶¶ 31, 38.)

In June 2023, Petitioner filed an application for asylum and withholding of removal, which remains pending. (Patrin Decl. ¶ 7.) In November 2023, the previously issued Notice to Appear was dismissed for failure to prosecute. (*Id.* ¶ 8.)

On December 23, 2024, Petitioner applied for TPS under the designation for Somalia. (Petition ¶ 36; Doc. Nos. 2-3, 2-7, Pet. Exs. C, G.) That application also remains pending. (Doc. No. 2-3, 2-5, Pet. Exs. C, E.)

In June 2025, Respondents served Petitioner with a new Notice to Appear containing the same charges and allegations as the March 2023 Notice. (Petition ¶ 34; Doc. No. 2-4, Pet. Ex. D.) The Notice required Petitioner to appear at the Fort Snelling, Minnesota Immigration Court on August 6, 2025. (Pet. Ex. D at 1.)

On December 3, 2025, Petitioner was apprehended by Respondents and has since remained in ICE custody. (Petition ¶¶ 39–42.) Removal proceedings are ongoing at Fort Snelling. (Patrin Decl. ¶ 12.)

## DISCUSSION

### I.     Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

3

The Supreme Court has made clear that immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

When the Executive Branch detains without statutory authorization, habeas relief is not limited to ordering additional process. The function of habeas corpus is to obtain release from unlawful custody. *Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995). Where detention lacks a lawful predicate, release is an available and appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## II.   Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H.*, 786 F. Supp. 3d at 1154–55. And because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

### A.   Statutory Structure of Immigration Detention

The Immigration and Nationality Act ("INA") does not confer one generalized detention power. Instead, Congress established separate detention authorities, each keyed to a noncitizen's procedural posture at a particular stage of the immigration process. *See Jennings*, 138 S. Ct. at 836–38.

The INA distinguishes between inspection, removal proceedings, and detention

authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that inspection process and, in general, requires detention. *Id.*; *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1149 (D. Minn. 2025).

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Which statute applies therefore matters. The detention authority available to DHS is determined by statute and by the noncitizen's procedural posture at the time of custody, not by later relabeling.

### B. Section 1225(b)(2) Does Not Authorize Petitioner's Detention

Respondents assert that Petitioner is subject to § 1225(b)(2), which mandates detention of certain "applicants for admission" pending removal proceedings. As Respondents recognize, multiple decisions in this District, including those from this Court, have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens in Petitioner's posture. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q.*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025). Respondents' examples of recent orders agreeing with their statutory interpretation do not alter the outcome.

5

Section 1225 is a front-end statute. It addresses detention at the point of initial encounter, when a noncitizen has not yet been admitted and immigration officials must decide whether to admit, parole, or place the individual into removal proceedings.

That stage passed for Petitioner in March 2023. Respondents encountered him near the border, issued him a Notice to Appear, and then released him into the United States. Mandatory detention was not invoked at that time. Instead, Respondents elected to release Petitioner to live in the community while his removal case proceeded under § 1229a. Petitioner remained at liberty for more than two and a half years. Nothing in the record suggests that Respondents ever revoked the order granting him release.

The Supreme Court has treated §§ 1225 and 1226 as addressing distinct categories of noncitizens at different procedural stages, rather than as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Section 1225 governs inspection and initial processing at the threshold of entry, while § 1226 governs detention of noncitizens already present in the United States during removal proceedings. Nothing in § 1225 authorizes DHS to impose mandatory detention after a noncitizen has been released into the interior and subjected to proceedings under § 1229a.

Other decisions in this District have rejected efforts to invoke § 1225 in those circumstances. *See, e.g.*, *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025). The statutory scheme contains no mechanism for reverting to § 1225 detention once that inspection posture has passed. Reading the statute otherwise would blur the distinction Congress drew between inspection-based detention and discretionary detention under § 1226.

On this record, § 1225(b)(2) does not authorize Petitioner's detention.

### C. Immediate Release is Warranted

Detention analysis under the INA proceeds in a set order. The threshold question is whether Congress has authorized detention at all under a statute that applies to the noncitizen's procedural posture. *Zadvydas*, 533 U.S. at 688–90. Only after identifying a valid source of detention authority does the inquiry turn to whether detention is mandatory or discretionary and what procedures, including bond hearings, the statute provides. *Jennings*, 38 S. Ct. at 836–39. Habeas review enforces that sequencing by testing the lawfulness of custody itself, not merely the adequacy of detention procedures. *Wajda*, 64 F.3d at 389.

Petitioner's continued detention rests on a statute and an interpretation that do not apply and is therefore unlawful. He is accordingly entitled to release on the conditions previously imposed in his Order of Release on Recognizance. *See Munaf*, 553 U.S. at 693 (describing release as the "typical remedy" for "unlawful executive detention").

Respondents argue that if Petitioner has been misclassified under § 1225, the proper remedy is a bond hearing under § 1226 rather than release. But a bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been established, ordering a bond hearing would treat the absence of statutory power as a mere procedural irregularity rather than a substantive defect. Habeas relief requires more. *Wajda*, 64 F.3d at 389. Habeas relief addresses the lawfulness of custody itself, not the adequacy of procedures that might attend some other, uninvoked challenge to detention. *See id.*; *Munaf*, 553 U.S. at 693.

Where the record shows that Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the Immigration and Nationality Act that authorizes his continued detention, the petition for a writ of habeas corpus is granted, and Petitioner's alternative TPS claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1. Petitioner Xuseen A.'s petition for a writ of habeas corpus (Doc. No. 1) is **GRANTED**.

2. Respondents shall immediately release Petitioner from custody, subject to the conditions of his March 21, 2023 Order of Release on Recognizance.

3. Respondents shall confirm Petitioner's release within 48 hours of this Order.

4. Respondents must ensure that a copy of this Order is served on the local officials in charge of the facility where Petitioner is being detained.

5. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: December 19, 2025

           *s/ Jerry W. Blackwell*
           JERRY W. BLACKWELL
           United States District Judge